IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALBERT CURTIS MILLS, | |
| Plaintiff, | |
| v. | Civil Action No.:  DKC-20-432 |
| MD DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, MARYLAND DIVISION OF CORRECTION, LAWRENCE J. HOGAN, *Governor,* BOYD K. RUTHERFORD, *Lt. Governor,* WALTER ISER, *Captain,* THOMAS SAWYERS, *Lieutenant,* VAUGHN WHITEMAN, *Lieutenant,* ROBERT L. GREEN, *Secretary,* APRIL CARR, *Sergeant* ICKES, *Correctional Officer,* JESSE RITCHEY, *Correctional Officer II,* JASON ELKINS, *Correctional Officer II,* RICHARD RODERICK, *Correctional Case Management Manager,* JOHN G. SINDY, *Correctional Case Management Specialist,* MARY S. JOHNSON, *Correctional Case Management Specialist,* F. TODD TAYLOR, *Executive Director,* JEFF NINES, *Warden,* FRANK BISHOP, STEPHEN T. MOYER, JOHN DOE, | |
| Defendants. | |

## MEMORANDUM OPINION

Pending in this civil rights case are Plaintiff's motions to amend (ECF Nos. 18 and 27) and the motions to dismiss filed by Defendants the Department of Public Safety and Correctional Services (DPSCS), Maryland Division of Correction, Governor Lawrence J. Hogan, Lt. Governor Boyd K. Rutherford, Secretary Robert L. Green, Correctional Officer Captain Walter Iser,

Lieutenant Vaughn Whiteman, Lieutenant Thomas Sawyers, Sergeant April Carr, Correctional Officer II Jesse Ritchey, Correctional Officer II Jason Elkins, Correctional Case Management Manager Richard Roderick, Correctional Case Management Specialist John G. Sindy, and Correctional Case Management Specialist Mary S. Johnson, (ECF No. 14) and former Secretary Stephen Moyer, former Warden Frank Bishop and Inmate Grievance Executive Administrator F. Todd Taylor, Jr. (ECF No. 23). Plaintiff has filed responses in opposition to the motions. (ECF Nos. 19 and 26.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Plaintiff's motions will be denied and the complaint shall be dismissed.

BACKGROUND

A.     Complaint Allegations

Plaintiff alleges that he was denied meaningful access to the courts because he was denied access to Administrative Remedy Forms, Administrative Remedy Appeal Forms, and continuation sheets that accompany the forms. ECF No. 1, p. 9. Plaintiff further alleges that the denial of these forms violates his rights under the Americans with Disabilities Act. *Id*.

Plaintiff states that Defendant Officers Ickes, Ritchey, Elkings, Lt Sawyers, and Case Management Specialists Sidney and Johnson denied him forms on various dates throughout June, July, August, September and October, 2016 and October-December, 2014. ECF No. 1, pp. 9-12. Plaintiff states that the failure to make the forms available to him meant that he could not challenge "violations of [his] conditions of confinement." ECF No. 1, p. 13.

Plaintiff states that, if he had access to the forms, he would have written claims that he was: 1) Denied library access by Officer Emerick on May 23, 2016; 2) Denied laundry services by Officer Saville on June 1, 2016 and Officer Dolly on June 4, 2016; 3) Denied outside recreation

on July 29, 2016 by Officer Butler; 4) Denied library access on July 29, 2019[1] by Officer Butler; 5) Denied dayroom access on July 16 by CO Ickes;  6) Denied dayroom access on July 18, 2016 by Officer Ickes; 6) Denied dayroom access on July 20, 2016 by Officer Self; 8) The Warden does not rotate Ickes from C Tier; 9) Denied religious services by Officer Ickes on October 9, 2016; and 10) Officers Ickes and Officer Elkins failed to make their security rounds and were off their security posts at various times on unspecified dates.  ECF. No. 1, pp. 13 -14.

Plaintiff states that the Warden is supposed to insure that the forms are available in his unit. ECF No. 1, p. 14.  He further alleges that "MD Staffs (Hogan SO Rutherford SO Green SO Green SO Neverdon SO Assistant Warden SO Chief of Security SO Iser SO Whiteman SO Carr SO Roderick) are responsible for the A.R.P."  *Id.*

Plaintiff states that he is "an American with Disabilities of dementia . . .marked by the development of multiple cognitive deficits (as memory impairment, aphasia, and inability to plan and initiate complex behavior) . . ." ECF No. 1, pp. 15-16.  He also states that he suffers from Parkinson's Disease and Schizophrenia.  *Id.*, p. 16.  He claims that he is excluded from the ARP program (cites to exhibit 1-25) (*id.*, p. 17) and has been diagnosed as "S.M.I. (severely mentally ill)" and placed in the Special Needs Unit ("SNU").  *Id.*, p. 17-18.

In 2009, Plaintiff was placed in the SNU because of his mental health needs. ECF No. 1, p. 18.  Plaintiff states that the Warden knows he is SMI and housed in the SNU and it is the Warden's responsibility to insure that he be provided ARPs in the SNU.  *Id.*  Plaintiff claims that staff believe they can get away with not giving him forms because he is housed in the SNU.  *Id.*, pp. 18-19.  He further states that staff know that he is in the SNU because of his mental health illnesses.  *Id.*, p. 19.

---

[1] This date must be in error.  All of the purported failures to provide the forms took place in 2016 or before.

Being excluded from the ARP process caused Plaintiff stress and worsened his Parkinson's disease and psychological problems.  ECF No. 1, pp. 19-20.  Plaintiff states that "NBCI staff[] use the SNU to abuse [him] by excluding [him] from the ARP" and excluding him from getting forms. *Id*., p. 21.  Plaintiff also states that his being excluded from the ARP process has prevented him from filing "many good and great cases" in this court.  ECF No. 1, p. 22.

Plaintiff claims that exclusion from the ARP process violates his rights under the First Amendment and to access the courts.  ECF No. 1, pp. 24-25.  He was prevented from filing "non-frivolous claims. . .about the conditions of confinement…"  ECF No. 1, p. 26 (references exhibits 1-25).  He also claims that he was retaliated against for filing grievances.  *Id*., p. 27-28.  He states that "NBCI staff[] took adviser [sic] action by denying me [ARPs] to file on their violations."  *Id*., p. 28.  He claims that he was denied ARPs because he filed ARPs regarding staff "violations of NBCI law."  *Id*.  He further alleges that he has been excluded from "a prison program (A.R.P.) as a result of [his] disability."  *Id*., p. 29.

As relief, Plaintiff seeks an injunction ordering all Defendants to give him 1,000 ARP forms, ARP continuation sheets, and ARP appeal forms.  ECF No. 1, pp. 30-32.  He asks for declaratory relief that Defendants Hogan, Rutherford, Green, Neverdon, Warden, Assistant Warden, Chief of Security, Iser, Whiteman, Carr, Roderick, and Sindy violated his rights under the First Amendment by failing to provide administrative forms.  *Id*., pp. 33-34.  He also seeks compensatory and punitive damages.  ECF No. 1, pp. 35-36.

In exhibits attached to the complaint, Plaintiff provides a "Request for Administrative Remedy" dated October 28, 2016, that states "proper forms for sustain the Administrative Remedy Procedure are not available in [his] housing unit."  ECF No. 1-1, p. 1.  Attached to that ARP is Plaintiff's recitation of the dates, times and correctional officers, who refused to provide him forms throughout May to October of 2016 (*id*., pp. 2-21) and October to December 2014 (*id*., p. 21).

4

Apparently having heard no response to that ARP, Plaintiff then filed a Headquarters Appeal.  ECF No. 1-1, pp. 29-32.  On November 29, 2016, the Office of the Commissioner redirected Plaintiff's submission to the Warden for a response.  ECF No. 1-1, p. 33.

On January 23, 2017 and February 6, 2017, Plaintiff wrote to Neverdon complaining that the Commissioner did not respond to his appeal and he never received a response to his grievance.  ECF No. 1-1, pp. 34-35.  On April 12, 2017, the Inmate Grievance Office denied Plaintiff's grievance received February 9, 2017 (assigned IGO No. 20170233) finding that he failed to state a claim upon which administrative relief could be granted.  Plaintiff was advised that he could request ARP forms not only from the officer on the tier but from Case Management and the library.  *Id.*, p. 36.[2]

On August 17, 2020, Plaintiff filed a motion to amend the complaint seeking to substitute Todd Taylor as the proper Defendant wherever Russell A. Neverdon was named in the initial complaint.  ECF No. 7.  That motion was granted on August 24, 2020.  ECF No. 8.  Subsequently, Plaintiff filed an amended motion to amend defendants, motion to correct name of Warden NBCI, motion to add defendants, and motion to correct defendant.  ECF Nos. 9, 10, 11, 13.  On December 14, 2020, the court granted the motion to amend (ECF No. 9) to the extent it added Defendants Bishop and Moyer as named Defendants and denied the motion to add Mr. Neverdon back into the case as a Defendant because the motion did not include any factual allegations as to Mr. Neverdon.  ECF No. 17.  The motions also sought to substitute the proper name of the Warden at NBCI, but ultimately Plaintiff sought to continue his claims as to Jeff Nines and accordingly the first motion to correct (ECF No. 10) was denied and the second (ECF No. 13) granted.  ECF No. 17.  Plaintiff's motion to amend (ECF No. 11) seeking to add as Defendants Audrey Brown and

---

[2]    The only other dates referenced by Plaintiff after 2016 is in this correspondence with the Commissioner and IGO.

Chief of Security William Bohrer was denied as futile because Plaintiff failed to explain how the additional proposed Defendants violated his constitutional rights.  ECF No. 17.

B.    Plaintiff's Pending Motions

Thereafter Plaintiff filed two additional motions to amend.  (ECF No. 18 and 27.)  In the first, Plaintiff again seeks to add Russell Neverdon as a Defendant in the case.  (ECF No. 18, p. 2.)  Plaintiff explains that "Neverdon is confronted with Audrey Brown's illegal act and possesses the power to prevent it and chooses not to act so Neverdon is deemed an accomplice and has bystander liability."  *Id*.  Plaintiff further explains that Neverdon knew Brown dismissed his grievance and was therefore aware of the violation of Plaintiff's rights.  *Id*., p. 3.  Plaintiff also states that Brown should be included in the case because she was informed of the constitutional violations in the grievance process and failed to remedy the wrongs.  *Id*., pp. 2-4.  He states that William Bohrer was in charge of the safety and security of NBCI and that this "pertains to the administrative remedy procedure and form for it.  Bohrer has the liability of Neverdon and Brown in personal involvement and omission concept."  *Id*., p. 4.  Plaintiff states that Bohrer knew of the other defendants' violations and could have stopped them but did not.  *Id*., p. 5.  Plaintiff further states the Neverdon, Brown and Borher violated his rights under the ADA, but does not explain how. *Id*., p. 6.

In the second motion to amend (ECF No. 27), Plaintiff states that because Officer Ickes is no longer employed at NBCI he wishes to replace him as a Defendant with Officer Justin L. Adams who is in Maryland and who was on Ickes' shift many times.  *Id*., pp. 1-2.

The pending motions to amend are denied.  Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is

earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id*. Where the proposed amendment to the complaint appears to be a futility, this court has the discretion to deny leave to amend. Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc*. 637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008).

Plaintiff's asserted claims as to Neverdon, Bohrer and Brown are based on the theory of respondeat superior and may not proceed.

Section 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, liability based on respondeat superior does not apply to a § 1983 action. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

7

factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian,* 972 F.3d 385, 398 (4th Cir. 2020).  With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1)  That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

As to Officer Adams, Plaintiff has failed to explain how Adams violated his constitutional rights by virtue of his proximity to Ickes.  As such the motions are denied.

C.     Defendants' Response

Defendants assert that the complaint has been filed outside the statute of limitations; DPSCS is immune from suit under the Eleventh Amendment; DPSCS is not a person amenable to suit; Defendants are immune from any suit brought against them in their official capacity; Plaintiff was not denied access to the court; Plaintiff failed to state a claim for violation of the ADA; there is no supervisory liability; Plaintiff fails to state a retaliation claim; Plaintiff's claim is barred under the Prison Litigation Reform Act because he asserts no physical injury; and Defendants are entitled to qualified immunity.

STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint.  *See Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The Supreme Court articulated the proper framework for analysis:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The statute of limitations is a defense that, ordinarily, must be raised by a defendant through an affirmative defense, Fed.R.Civ.P. 8(c), and the burden of establishing the defense rests on the defendant. *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007). Thus,

a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.  But in the relatively rare circumstances where the facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).  This principle applies, however, if all facts necessary to the affirmative defense 'clearly appear [] on the face of the complaint.'

*Id*. (citations omitted).

DISCUSSION

A.    Statute of Limitations

Defendants urge dismissal of the complaint based on the statute of limitations.  Section 1983 does not contain a statute of limitations.  Thus, to determine whether a § 1983 claim was timely filed, courts look to the statute of limitations from the most analogous state-law cause of action.  *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 388 (4th Cir. 2014).  A suit filed pursuant to 42 U.S.C. § 1983 constitutes a personal injury action.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code (2020 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J.").

Although the Maryland statute of limitations applies, the matter of when a cause of action has accrued under § 1983 is a federal question.  *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975)); *see also McDonough v. Smith*, ⸺ U.S. ⸺, 139 S. Ct. 2149, 2155 (2019).  "An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough*, 139 S. Ct. at 2155 (quoting *Manuel v. Joliet*, ⸺ U.S. ⸺, 137 S. Ct. 911, 920 (2017)).

A claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Nassim*, 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)); *see Parkway 1046, LLC v. U.S. Home Corp.*, 961

F.3d 301, 307 (4th Cir. 2020) (stating that a cause of action accrues when the plaintiff "has actual or constructive knowledge" of the claim). But accrual cannot occur until the plaintiff has (or should have) "possession of the critical facts that he has been hurt and who has inflicted the injury." *Kubrick*, 444 U.S. at 122, 100 S.Ct. 352 (discussing discovery rule in the context of the Federal Tort Claims Act, which requires notice to the government "within two years after such claim accrues"); *see also  Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) (en banc) ("The clear import of  *Kubrick* is that a claim accrues ... when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury."); *Gilbert v. United States*, 720 F.2d 372, 374 (4th Cir. 1983). However, "the answer is not always so simple." *McDonough*, 139 S. Ct. at 2155. "Where, for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *Id.*

Although all of Plaintiff's allegations concern the alleged denial of forms in 2014 and in 2016, it is unclear from the pleadings when Plaintiff's claims of denial of access to court actually would have accrued. He seems to argue that the inability to access the proper forms needed in order to exhaust administrative remedies prevented him from filing lawsuits concerning conditions of confinement. While he identifies those claims he might have filed, neither he nor Defendants identifies when, if ever, those claims were "lost" and thus when such a claim accrued. As such, Defendants' motions cannot be granted on the basis that Plaintiff's claims are time barred.

B.     Access to Courts

Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right is not all encompassing, rather prisoners must be provided the tools to attack their sentences and to challenge the conditions of their confinement.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Lewis*, 518 U.S. at 399. Plaintiff must establish that his underlying claim was "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 416 (footnote omitted). Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal).

Plaintiff does not explain explicitly how his lack of access to grievance forms prevented him from litigating his claims. It can be assumed that he thinks the failure to exhaust administrative remedies would have foreclosed his ability to litigate a claim. But his alleged inability to access the inmate grievance process would not necessarily foreclose his access to the courts. In *Ross v. Blake*, ––– U.S. ––––, 136 S.Ct. 1850, 1858 (2016), the Court explained that an inmate need only "exhaust available remedies, but need not exhaust unavailable ones." (quoting § 1997e(a)). Accordingly, Plaintiff would only need to pursue administrative proceedings which are "capable of use." *Id*. Under the PLRA, a Plaintiff can overcome ordinary exhaustion requirements by demonstrating that he had no ability to use the grievance procedures.

Further, while it is true that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires prisoners to exhaust their administrative remedies before pursuing claims in court, denial

of access to the grievance process does not state a claim by itself.  The constitution does not confer a right "to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *see also Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure."). Accordingly, Plaintiff's inability to access the grievance process does not give rise to a constitutional claim.

Accordingly, even assuming that Defendants deprived Plaintiff of access to grievance procedures, this deprivation would not foreclose his access to the courts and does not amount to a constitutional violation. *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 543–44 (D. Md. 2019) (holding inability to access grievance procedures does not state a constitutional claim); *see also Robinson v. Wexford*, No. ELH-17-1467, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming, arguendo, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated" because "'inmates have no constitutional entitlement or due process interest in access to a grievance procedure.'") (quoting *Booker*); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."); *Taylor v. Manis*, No. 7:20-CV-00121, 2021 WL 519903, at *4–5 (W.D. Va. Feb. 11, 2021) (holding a prison official's failure to comply with a grievance procedure is not actionable under § 1983). Accordingly, Plaintiff's access to courts claim is dismissed.

C.      Retaliation

Plaintiff alleges that Defendants' conduct was retaliatory in nature. To succeed on his First Amendment retaliation claim, Plaintiff must establish that "(1) he engaged in protected First

Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)) (alterations omitted).

The Fourth Circuit has concluded that courts should apply the "same-decision test" of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), in determining the causation element of a prisoner's First Amendment retaliation claim. *Martin*, 977 F.3d at 299. Once the prisoner-plaintiff shows that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action," then the burden shifts to the defendant to prove a permissible basis for taking that action. *Id.* at 300. Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). And claims of retaliation by inmates are generally regarded with skepticism. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams,* 40 F.3d at 74.

Plaintiff cannot satisfy his initial burden to show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *See Martin*, 977 F.3d at 300. He offers nothing, other than rank speculation, that the conduct alleged was retaliatory in nature. In short, there are insufficient allegations in the complaint to support a retaliation claim and Plaintiff's retaliation claim is dismissed.

D.     ADA

To establish a violation of the ADA, Plaintiff must prove: "(1) that he has a disability; (2) that he is otherwise qualified for the . . . benefit in question; and (3) that he was excluded from the . . . benefit due to discrimination solely on the basis of disability." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 (4th Cir. 1995). In the instant case, Plaintiff has only sufficiently

alleged that he has a disability, not that services were denied for discriminatory reasons. Thus, the court dismisses Plaintiff's ADA claims.[3]

CONCLUSION

By separate Order which follows, Defendants' motions shall be granted, and Plaintiff's complaint as amended, shall be dismissed.  All remaining motions shall be denied.

August 9, 2021                                                    _____/s/_____
                                                                 DEBORAH K. CHASANOW
                                                                 United States District Judge

_____

[3]    The court need not address Defendants' other defenses.